IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TASLID INTERESTS, INC. and KATY MOTELS, INC. dba MEMORIAL INN & SUITES | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 4:18-cv-1692 |
| ARCH SPECIALTY INSURANCE COMPANY | § § § § | |
| Defendant. | § § | |

**DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY OF THOMAS J. IRMITER AND ROBERT HINOJOSA AS TO CAUSATION OF ROOF DAMAGE AND REPLACEMENT COST VALUE DAMAGES**

Defendant Arch Specialty Insurance Company ("Arch") files its Motion to Exclude Expert Testimony of Thomas J. Irmiter and Robert Hinojosa as to Causation of Roof Damage and Replacement Cost Value Damages, and would show:

**I.   BASIS OF MOTION TO EXCLUDE EXPERT TESTIMONY**

This is an insurance dispute involving a claim for property damage to Plaintiffs' motel allegedly sustained during Hurricane Harvey. Arch partially denied the claim based on exclusions and limitations in the policy. Plaintiffs filed this suit asserting breach of contract and extra-contractual bad faith claims. Plaintiffs' designated retained experts Thomas J. Irmiter and Robert Hinojosa authored a "Storm Damage Report" containing opinions regarding causation of the property damage and the cost of repair or replacement. Irmiter and Hinojosa, however, fail to state the manner in which they reached their opinions as to cause and fail to identify the what, and why, factual evidence in the case supports their pre-ordained conclusions. The experts offer nothing more than *ipse dixit* or "because I say so" opinions, which are not reliable and are not relevant or

1

helpful to the jury. Further, the experts' opinions as to replacement cost value damages should be excluded because replacement cost is not the proper measure of damages under the policy and therefore the testimony is not relevant or helpful.

## II.   BACKGROUND

Plaintiffs' breach of contract claim asserts that coverage existed under the insurance policy issued by Arch for property damage to their hotel allegedly sustained during Hurricane Harvey, in part based on the allegation that portions of the property's roof were compromised by wind (a covered peril), allowing water to enter the building.[1] Arch retained an engineer to inspect the reported damage at the property, and he concluded that the water intrusion was a result of pre-existing deficiencies in the building, including "widespread" deficiencies in the 20 year-old roof, and that there was no evidence that wind during the storm created any openings through which water entered. Arch partially denied the claim based on an exclusion in the policy that provides there is no coverage for interior water damage unless the storm creates an opening in the building envelope through which water enters, which Arch's engineer concluded did not occur.

To support the claims, Plaintiffs retained Thomas J. Irmiter, a construction consultant and the owner and president of Forensic Building Science, Inc., and Robert Hinojosa, a professional engineer. Irmiter and Hinojosa are designated to testify regarding "the cause and extent of structural damages . . . [and] . . . causation . . . .", as well as the need for and cost of repair or replacement due to the "windstorm," Hurricane Harvey.[2] Plaintiffs produced the report prepared

---

[1] Plaintiffs' Original Complaint ¶ 11. In addition to the contract/coverage claim, Plaintiffs assert claims of bad faith arising from the alleged wrongful partial denial of the property damage claim and claim-handling process, including violations of the Texas Insurance Code and Deceptive Trade Practices Act, and breach of the common law duty of good faith and fair dealing.
[2] Exhibit A, Plaintiff's Designation of Experts, pp. 6-7

2

by Irmiter and Hinojosa entitled "Storm Damage Report (hereinafter the "<u>Report</u>")."[3] Under the Causation Statement section of the Report, the experts opine that:

> 4.0 <u>Causation Statement</u>
>
> Based upon evidence collected from weather research and the physical inspection and roof, exterior wall and window assessment, we have concluded that the roof system, windows, some PTAC units, parapet walls, and some roof vents were damaged by the tornadic winds which occurred during the storm event. In addition, an overabundance of rain more than likely caused the roof system to be submerged causing water to damage the materials under the primary membrane, including adhesives, insulation and ceiling materials. These were still wet at the time of our inspection and will not recover. In our opinion, the low-slope built-up roof must be completely replaced. In our opinion, the current design of the parapet walls will not meet code at the time of the loss and will require complete replacement. In our opinion, complete replacement of the windows is necessary. The Work that has been done after the storm should be considered temporary in nature.
>
> Based upon our training, education, experience, a reasonable degree of building science and engineering certainty and the information gathered during our inspections and weather data search, it is more likely than not that the observed damage to the roofing system is a result of Tropical Storm Harvey. On August 26-29, 2017 there was sufficient rain and wind to cause the above-referenced damage.
>
> Based on our interior inspection of the building, we have concluded that it is more likely than not, that the interior water damage we observed was a result of Tropical Storm Harvey, with the exception of the prior damage, as reported.
>
> Failure to completely remove and replace the damaged roof systems, windows, and parapets at the property will result in additional damage to the interior due to water intrusion.
>
> [4]

Nowhere in the Report do Irmiter or Hinojosa identify or describe what actual evidence they relied upon to conclude that the roof system was damaged by so-called tornadic winds or that wind damage during the storm created an opening through which water entered. In contrast, Arch's structural engineering expert, Eric Wetzler, P.E., provided the "how and why" in reaching the opposite conclusion that there was no wind or wind-borne debris damage to the building envelope or roof system caused by the effects of Hurricane Harvey.[5] Wetzler's report explained the typical

---

[3] Exhibit B, Storm Damage Report.
[4] *Id.* at Bates No. 55.
[5] Exhibit C, Weztler Report of Findings.

3

evidence of wind damage one would expect to see to membrane roofing and the specific type of shingles on the roof, such as fold-over, peel-back, deformity, missing materials, or tearing/creasing of shingle tabs, which was not present at Plaintiffs' property.[6] Instead, Wetzler specifically identified a number of widespread deficiencies and pre-existing damage in finding that interior water damage occurred as a result of those deficiencies.[7] Conversely, Plaintiffs' experts, Irmiter and Hinojosa, fail to explain what facts were relied upon or what or how reliable methodology or experience was applied to arrive at their conclusions regarding the cause of the property damage.

### III. ARGUMENTS AND AUTHORITIES

#### A. The Experts' Conclusory Opinions on Causation Are Unreliable

##### 1. *Daubert* and the Reliability Standard

Federal Rule of Evidence 702 permits a properly qualified expert to testify about his opinions if all four of the following requirements are met: (1) the expert's specialized knowledge will help the trier of fact understand the evidence; (2) the expert's testimony is based on sufficient data; (3) the expert's testimony is the product of reliable principles and methods; and (4) the expert's methods are applied reliably. FED. R. EVID. 702. The court assesses "whether the reasoning or methodology underlying the testimony is scientifically valid and … whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93 (1993). The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation. *See id.* at 590.

Rule 702 requires district courts to "function as gatekeepers and permit only reliable and relevant expert testimony to be presented to the jury." *Wellogix, Inc. v. Accenture, LLP*, 716 F.3d 867, 881 (5th Cir. 2013). The court must perform its gatekeeper function and exclude opinions at

---

[6] *Id.* at Bates Nos. 34-35.
[7] *Id.* at Bates No. 35.

4

trial if "an expert's testimony, or its factual basis, data, principles, methods, or their application" are "called sufficiently into question" by another litigant in the case. *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001). Expert testimony "must be reliable at each and every step or else it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia.*" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007). The party offering the testimony bears the burden of establishing reliability by a preponderance of the evidence. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

    2.  An Expert's "Say-So" is Not Admissible Opinion Testimony

Under these principles, an expert's unsupported conclusions are not reliable and are therefore not admissible. The Supreme Court explained that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Rather, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*; *see also LeBlanc v. Chevron USA, Inc.* 396 F. App'x 94, 98 (5th Cir. 2010). It is "well within" a district court's discretion to exclude expert testimony when there is an "absence of meaningful analysis or reasoning[.]" *See Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 664 (6th Cir. 2005) (citations omitted).

As explained in the commentary to Rule 702, an expert must be able to articulate the connection between his experience and his conclusions in a particular case: If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more

5

than simply 'taking the expert's word for it.' FED. R. EVID. 702 advisory committee's note (2000) (*quoting Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995)).

In *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, the district court excluded expert testimony as "improper *ipse dixit* ('because I say so') expert opinions" because although the expert referred to the existence of data used to develop his opinions, he failed to actually describe the data upon which he relied in arriving at his opinion, eliminating the ability to question the manner in which he arrived at his conclusion. 2010 U.S. Dist. LEXIS 10791 at *53-54 (S.D. Tex. Oct. 9, 2010), *citing See Gen. Star Indem. Co. v. Sherry Brooke Revocable Trust*, 243 F. Supp.2d 605, 626 (W.D. Tex. 2001) (stating that conclusory opinions by experts lack the requisite evidentiary reliability because they fail to set forth a discernable methodology). The court further explained that, to the extent the expert's opinion was based on application of his professional experience, he failed to state how his background experience directed his analysis. *Id*. at *54-55.

In a case involving a similar issue presented here, whether property damage sustained during a hurricane was caused by wind rather than a noncovered peril under an insurance policy, the court found that there was "simply too great an analytical gap between the data and the opinion proffered." *405 Condo Assocs. LLC v. Greenwich Ins. Co.*, 2012 U.S. Dist. LEXIS 181922 at *17 (S.D.N.Y. Dec. 26, 2012) *quoting Joiner*, 522 U.S. at 146. The expert opined that "within a reasonable degree of engineering certainty that the roof and flashing were first damaged by wind, and that the water penetration and damage were subsequent to the wind damage." *Id*. at *16. However, the court found that the testimony was inadmissible because the expert testimony failed to adequately explain how the expert reached his conclusion that gusts of wind damaged the roof. *Id*.

       3.       Plaintiffs' Experts Fail to Provide the "How" and "Why" Supporting Their Conclusions as to Causation

Irmiter and Hinojosa's opinions on causation as written in the Report do not articulate a basis for their conclusion that the "roof system" or "some roof vents" were damaged by "tornadic winds" during Hurricane Harvey. Separately, the experts more generally state that Hurricane Harvey caused the roof membrane to be wet and water ended up in the motels' units, and that the damage resulted, generally, from the storm.[8]

These *ipse dixit* opinions are completely devoid of the required analytical link connecting each step between the facts, application of methodology and experience, and the opinion proffered. Irmiter and Hinojosa refer to "weather research" and their "physical inspection" and "assessment" to conclude that there was wind damage. The experts do not explain what specific physical evidence establishes that wind purportedly created an opening in the roof. While they state there was damage to the roof system and some roof vents, they do not describe the damage, such as by stating what materials, if any, were missing or deformed, whether there was evidence indicative of wind damage such as peel-back, fold-over, or the like. The experts do not state where (the specific location(s) on the roof) such wind damage purportedly occurred, or where on the roof, or in which roof component, an opening was found or observed that was purportedly created during the storm. Likewise, the experts do not explain the actual location or mechanism of where or how the water purportedly entered through the roof to cause it, and/or the interior of the building, to be wet. Further, the experts do not address or exclude water intrusion through non-covered perils (like pre-existing damage throughout an old, dilapidated roof or flood water), or even attempt to differentiate between alleged wind damage caused by Hurricane Harvey from pre-existing damage or deficiencies or rain damage alone.

---

[8] *Id.* at Bates Nos.55-56.

In working backwards to support coverage under the policy, the experts merely say that there was a storm, there was wind damage to the roof, the property's roof was wet, and the interior motel units had water damage. Given the absence of a clear methodology in arriving at their conclusions on causation, the opinions are unreliable and inadmissible.

### B.  Conclusory Opinions Are Not Relevant or Helpful to the Jury

Not only are Irmiter and Hinojosa's conclusory opinions on causation inadmissible under Rule 702 because they are unreliable, but the opinions should be excluded on the additional bases that they are not relevant to the material issues in this case and not helpful to the specific issues before the jury. An expert opinion must "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *see also Brown v. Parker-Hannafin Corp.*, 919 F.2d 308, 311-12 (5th Cir. 1990). Furthermore, the court has discretion to exclude expert testimony that is unhelpful to the jury under Rule 403 where the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. FED. R. EVID. 403.

The experts contend that the property was "damaged by the tornadic winds which occurred during the storm event" and that ". . . it is more likely than not that the observed damage to the roofing system . . . [and] the interior water damage . . . is a result of Tropical Storm Harvey."[9] But whether the roof damage or interior water damage occurred or was a "result" of Hurricane Harvey is not a material or ultimate issue in this case. There is no dispute that the property suffered some damage during the storm. Instead, with respect to Plaintiffs' contract claim arising from the partial denial of benefits and alleged breach of the policy, the jury must determine whether the damage was a result of a covered cause of loss. To do so, the jury must determine if policy exclusions

---

[9] *Id.* at Bates No. 55.

carving out interior water damage unless the storm creates an opening in the building envelope or damage caused by pre-existing deficiencies are applicable, and thus whether the partial denial of the claim was or was not in compliance with the insurance contract. Accordingly, the jury must determine whether the roof and interior damage were a result of wind damage during the storm creating an opening through which water entered, or, if the damage resulted from a noncovered cause of loss, such as pre-existing deficiencies, lack of maintenance, flood, and rainfall alone.

Irmiter and Hinojosa's opinions will not help the jury come to these ultimate determinations as to how the damage occurred. Although they opine that there was wind damage, Irmiter and Hinojosa do not opine that water entered through a storm-created opening. They conclude only that the roof membrane was wet and that interior water damage occurred, but they never connect the alleged water damage to a covered cause of loss or explain how any alleged wind damage resulted in water intrusion. Expert opinion is not needed to tell the jury that the property was damaged as a result of Hurricane Harvey. Their opinions on causation are of no help to the jury in sorting out a reliable explanation of how and why the damage occurred. Therefore, their opinions are neither relevant nor helpful, or, any probative value is substantially outweighed by potential prejudice, confusion or misleading the jury, and should be excluded from trial.

   **C.** **The Experts' Storm Damage Report Fails to Comply with Rule 26(a)**

Federal Rule of Civil Procedure 26(a)(2)(B) requires that expert reports contain, among other things: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; and (iii) any exhibits that will be used to summarize or support them. Failure to comply with Rule 26(a)'s disclosure requirements precludes a party from using such evidence at a trial or hearing, or on a motion, unless such failure was substantially justified or harmless. FED. R. CIV. P. 37(c)(1); *see*

*also Roberts ex rel. Johnson v. Galen of Va., Inc.,* 325 F.3d 776, 782 (6th Cir. 2003) (stating that Rule 37(c)(1) "requires absolute compliance" with Rule 26(a)").

The Report prepared by Irmiter and Hinojosa is deficient under Rule 26(a) for failing to disclose their methodology. As discussed above, the Report fails to provide the "how and why" of their opinions. *Salgado v. General Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998) ("Expert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions."); s*ee also Smith v. State Farm Fire and Cas. Co.*, 164 F.R.D. 49, 54 (S.D. W.Va. 1995) (finding plaintiff's experts' reports not in compliance with Rule 26(a), where they "refer[red] to massive amounts of documents as the basis for the opinions which are expressed in vague terms, with few specific references.").

Because Plaintiffs failed to comply with Rule 26(a) and such violation was not substantially justified or harmless, pursuant to Rule 37(c)(1), the testimony of experts Irmiter and Hinojosa regarding causation should be excluded from trial.

**D.     The Experts' Opinions on Replacement Cost Value Are Inadmissible**

As established in Arch's Motion for Summary Judgment filed on January 28, 2019, under the plain language of the insurance policy, to the extent there is coverage, *arguendo*, Plaintiffs are only entitled to actual cash value damages. The opinions of Irmiter and Hinojosa regarding replacement cost value are therefore irrelevant, not helpful to jury, and not admissible.

The Policy provides for replacement cost value so long as the Plaintiffs actually repair or replace the damaged property.  Section G(3) of the Building and Personal Property Coverage Form states:

> **G.     Optional Coverages**
>
> If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

### 3. Replacement Cost

**a.** Replacement cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

**d.** We will not pay on a replacement cost basis any loss or damage:

(1) Until the lost or damaged property is actually repaired and replaced; and
(2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.[10]

Subsection (d) is clear that Plaintiffs are entitled to replacement cost value **only** if they actually repair or replace the damaged property as soon as reasonably possible after the loss or damage. It is undisputed that Plaintiffs did not repair or replace the reported damage to the Property.

The insurance policy unambiguously requires Plaintiffs to repair the property before receiving replacement cost value damages. Texas courts have held this language is clear and unambiguous. *See, e.g., Ghoman v. N.H. Ins. Co.*, 159 F. Supp.2d 928, 932 (N.D. Tex. 2001). In *Fitzhugh 25 Partners, L.P. v. KILN Syndacite KLN 501*, an insured claimed it was entitled to replacement costs as the replacement requirement was not a condition precedent to the policy. 261 S.W.3d 861, 863 (Tex. App.--Dallas 2008, pet. denied). The Dallas Court of Appeals disagreed, explaining that "the replacement of damaged property is an event that triggers coverage. It is the act of replacing the property that causes the insured to suffer an additional loss for which he purchased additional coverage." *Id.* at 864. The court further noted that "[t]o allow an insured to recover replacement costs in the absence of actual replacement would permit the insured to recover for a loss he has not suffered." *Id.* (citing *Harrington v. Amica Mut. Ins. Co.*, 223 A.D.2d 222, 224 (N.Y. App. Div. 1996)).

---

[10] Exh. D at Bates No. 158.

Plaintiffs do not dispute that the repairs have not been completed. Therefore, under the unambiguous terms of the policy and well established case law, Plaintiffs are only entitled to a recovery of actual cost value damages, if any recovery at all. Replacement cost value is not recoverable and is irrelevant. Any opinion by Irmiter or Hinojosa regarding replacement cost value will not aid the jury in determining the appropriate amount of actual cash value damages, if any, and should be excluded from trial.

## IV.   CONCLUSION

The result-oriented opinions of Thomas Irmiter and Robert Hinojosa regarding causation of the property damage amount to nothing more than inadmissible *ipse dixit* opinions, as the only connection between the conclusions and the existing data are the experts' own assertions. An expert cannot simply point to his resume and then engage in unfettered speculation. The conclusory opinions are unreliable, not relevant, and not helpful. Further, the applicable measure of damages in this case is actual cost value, not replacement cost value, thus the experts' opinions as to replacement cost value should be excluded.

## PRAYER

Defendant Arch Specialty Insurance Company prays that this Motion to Exclude Expert Testimony of Thomas J. Irmiter and Robert Hinojosa as to Causation of Roof Damage and Replacement Cost Value Damages be granted, that the experts' opinions as to same be excluded from trial, and for such other and further relied to which it may be entitled.

Respectfully submitted,

**Gordon Rees Scully Mansukhani LLP**

By: <u>*/s/ Christopher M. Raney*</u>
Christopher M. Raney (Attorney-In-Charge)
State Bar No. 24051228
Federal Bar No. 609101
craney@grsm.com
1900 West Loop South, Suite 1000
Houston, TX 77027
(713) 961-3366 (Telephone)
(713) 961-3938 (Facsimile)

**ATTORNEYS FOR DEFENDANT ARCH SPECIALTY INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was served upon all counsel via electronic filing on January 28, 2019.

<u>*/s/ Christopher M. Raney*</u>
CHRISTOPHER M. RANEY