IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TASLID INTERESTS, INC. and KATY MOTELS, INC. dba MEMORIAL INN & SUITES<br>  *Plaintiffs,*<br><br>v.<br><br>ARCH SPECIALTY INSURANCE COMPANY<br>  *Defendant.* | § § § § § § § § § § § | Civil Action No. 4:18-cv-1692 |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY OF THOMAS J. IRMITER AND ROBERT HINOJOSA AS TO CAUSATION OF ROOF DAMAGE AND REPLACEMENT COST VALUE DAMAGES [DKT 18]**

Plaintiffs Taslid Interests, Inc. and Katy Motels, Inc. ("Plaintiffs") respond to Arch's motion to exclude expert testimony of Thomas Irmiter and Robert Hinojosa (Dkt. 18).

### I. NATURE AND STAGE OF THE PROCEEDINGS

This motion to exclude is one of four motions defendant Arch Specialty Insurance Company ("Arch") filed on January 28, the deadline for dispositive motions. Docket call is set for May 31, 2019.

### II. ISSUE TO BE RULED UPON

Should this Court exclude the opinions of Plaintiffs' duly designated, highly qualified expert witnesses on causation and damages, when those witnesses (1) have testified many times on these very issues in state and federal courts, (2) inspected the Property at issue and prepared an exhaustive, comprehensive, and data-driven report reflecting their findings, and (3) can offer testimony that will undoubtedly aid the jury?

The Court's inquiry into an expert is a flexible one, focusing on multiple factors. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 594 (1993). Trial courts are afforded wide discretion when evaluating the admissibility of expert testimony. *Hamling v. United States*, 418 U.S. 87, 94 (1974).

### III. SUMMARY OF THE ARGUMENT

This is a first-party commercial property insurance matter. Arch seeks to exclude Plaintiffs' duly designated building consultant and engineering experts. Arch's misplaced arguments are not the proper subject of a motion to exclude, and Arch can offer no legitimate legal basis under any relevant authority to support exclusion of Plaintiffs' experts.

First, as a threshold procedural matter, Arch seek to exclude the testimony of experts whose depositions it has not yet taken, but whom Plaintiff's counsel agreed to make available after the discovery period. Plaintiffs designated Tom Irmiter and Robert Hinojosa as experts and submitted their reports in accordance with FED. R. CIV. P. 26(b)(4) and this Court's scheduling order on October 19, 2018. (Dkt. 10 ¶ 3.) Discovery closed in this case on December 30, 2018. (*Id.* ¶ 5.) Arch's counsel never even requested depositions of these witnesses until after the discovery period had expired, let alone issued deposition notices for them. But instead of forcing Arch to seek relief from this Court to obtain the depositions after the discovery period lapsed, Plaintiffs' counsel agreed to permit discovery of Irmiter and Hinojsa after the expiration of the discovery period, and those depositions are set for February 22 (Irmiter) and March 7 (Hinojosa). Arch's counsel denied Plaintiff's counsel's request to continue the submission date until after those depositions concluded. (Ex. 1, email string between counsel).

Nonetheless, as a substantive matter, these issues are moot because Arch's motion is wholly without merit. Tom Irmiter and Robert Hinojosa are impeccably qualified experts who will testify as to

the cause and extent of damages at Plaintiffs' property as a result of the wind during Hurricane Harvey. Arch chooses not to challenge their impeccable qualifications, but instead seeks to exclude their testimony simply because Arch disagree with the opinions contained. The Federal Rules provide for very clear bases upon which a party's expert may be excluded from testifying at trial, and Arch's motion fails to substantiate any of them. Irmiter and Hinojosa are highly-qualified experts whose testimony will assist the jury in assessing liability and damages at trial. Arch and its counsel will have the opportunity to cross examine, attack, and impeach Irmiter and Hinojosa, first at their depositions and later at trial. But Arch's unfounded and unsupported attack on those experts must be denied.

### IV. ARGUMENT AND AUTHORITIES

**A. Under the relevant standards for admissibility of expert testimony under the Federal Rules, exclusion of experts is the exception rather than the rule.**

Under the Federal Rules of Civil Procedure, the following is required of an expert witness:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;
(ii) the facts or data considered by the witness in forming them;
(iii) any exhibits that will be used to summarize or support them;
(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition;
(vi) and a statement of the compensation paid for the study and testimony in the case.

FED. R. CIV. P. 26(a)(2)(B). In accordance with this Rule and the Court's procedures, Plaintiffs designated Irmiter and Hinojosa as experts on October 19, 2018.

The admissibility of expert testimony in federal courts is governed primarily by Federal Rules of Evidence 702, 703 and 704. Rule 702 provides that an expert must be qualified and the testimony be relevant and reliable. FED. R. EVID. 702. Specifically, the Rule is as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:
>
>> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>>
>> (b) The testimony is based on sufficient facts or data;
>>
>> (c) The testimony is the product of reliable principles and methods; and
>>
>> (d) The expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Going further, Rule 703 provides as follows:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

FED. R. EVID. 703. Finally, Rule 704 provides that "[a]n opinion is not objectionable because it embraces an ultimate issue." FED. R. EVID. 704. The court's inquiry into an expert is a flexible one, focusing on multiple factors. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 594 (1993). Trial courts are afforded wide discretion when evaluating the admissibility of expert testimony. *Hamling v. United States*, 418 U.S. 87, 94 (1974).

Rule 702 recognizes five bases for qualifying an expert, and courts recognize that meeting one of the five criteria is sufficient: "knowledge, skill, experience, training, or education." FED. R. EVID. 702; *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 176 (5th Cir. 1990). The degree of qualification required "is only that necessary to insure that the witness's

testimony 'assist' the trier of fact," which means the testimony helps the jury understand an issue. *Salinas v. State Farm Fire & Cas. Co.*, No. B-10-194, 2012 U.S. Dist. Lexis 153962, at *9 (S.D. Tex. Feb. 23, 2012). "If a witness has general expertise in a broad subject but is not a specialist in the specific aspect of that subject that is pertinent in the case, most courts have concluded that general knowledge of a subject can be sufficient in such a case to qualify the witness as an expert in a specialized field." *Id.* at *10 (*citing Huval v. Offshore Pipelines, Inc.*, 86 F.3d 454, 457–458 (5th Cir. 1996)).

Additionally, "[t]he test of reliability is necessarily a flexible one." *Eagle Oil & Gas Co. v. Travelers Prop. Cas. Co. of Am.*, No. 7:12-cv-00133-O, 2014 U.S. Dist. LEXIS 103537, at *9–10 (N.D. Tex. July 30, 2014). The non-exclusive list of factors for a court to consider under *Daubert* include the following: whether it (1) can be and has been tested; (2) has been subjected to peer review and publication; (3) has a high known or potential rate of error and standards controlling its operation; and (4) is generally accepted within the relevant scientific or technical community. *Vargas v. Lee*, 317 F.3d 498, 500 (5th Cir. 2003) (citing *Daubert*, 509 U.S. at 593–94). However, when an expert's opinions are based in large part on their experience in the field, the *Daubert* factors "are not pertinent" to determining reliability; rather, a court may find that the expert's experience and education form a reliable basis for their opinions. *Salinas*, 2012 U.S. Dist. Lexis 153962, at *18.

Given the broad spectrum of expert testimony that will assist the trier of fact in understanding the case, courts recognize that "the rejection of expert testimony is the exception rather than the rule." *Eagle Oil & Gas Co.*, 2014 U.S. Dist. LEXIS at *10 (citing FED. R. EVID. 702, adv. comm. notes (2000)). Rather than simply excluding expert testimony, the "traditional

and appropriate means" of attacking a party's evidence include "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Id.* (*citing Daubert*, 509 U.S. at 596)). Here, Arch fails to carry its burden in proving that Plaintiffs' building consultant and engineering experts should be struck from testifying. In fact, the record demonstrates otherwise.

### B. Arch's motion seeks to improperly shift the burdens of substantive proof applicable to this case, on both causation and damages.

As a threshold matter, Arch's motion to exclude Plaintiffs' experts is a backdoor attempt at impermissibly shifting the substantive burdens of proof in this case. As Plaintiffs brief in their concurrently filed response to Arch's motion for summary judgment, Plaintiffs' initial burden is simply to show a covered loss along with the value of that loss. *See Ayoub v. Chubb Lloyds Ins. Co.*, 641 F. App'x 303, 307 (5th Cir. 2016). Because the policy at issue in this case is an "all-risk" policy, there is "coverage for all risks unless the specific risk is included." *Mid-Continent Cas. Co. v. Petro. Sols., Inc.*, No. 4:09-0422, 2016 U.S. Dist. LEXIS 133972, at *75 n.177 (S.D. Tex. 2016). Arch does nothing, in either its motion for summary judgment or its motion to exclude the testimony of Irmiter and Hinojosa, to contest that Plaintiffs meet that initial burden. (*See* Dkt. 18, 19.)

But when an insurer invokes an exception or limitation to a policy, the burden of proof shifts to the insurer. *See Ayoub*, 641 Fed. Appx. at 307; *see also* TEX. INS. CODE § 554.002; *Markel American Ins. Co. v. Lennar Corp.*, 342 S.W.3d 704, 708–09 (Tex.App.-Houston [14th Dist.] 2011). It is Arch, not Plaintiffs, who must present evidence to prove any limitations to the cause and amount of loss sustained by Plaintiffs. *See Ayoub*, 641 Fed. Appx. at 307. Striking Plaintiffs' experts is not an appropriate proxy for satisfying Arch's burden to prove a limitation on damages.

A case from the Southern District of Texas supports this conclusion. In *Salinas v. State Farm Fire & Cas. Co.*, No. B-10-194, 2012 U.S. Dist. LEXIS 153962, at *19 (S.D. Tex. 2012), State Farm attempted to strike the insured's experts on proper restoration methods and costs on the based in part on the fact the experts did not consider the condition of the property prior to the storm in question and also because they relied on statements from the plaintiff-insured. *Id.* The court rejected State Farm's argument with specific attention to the insured's burden to prove the amount of damages and State Farm's corresponding burden to prove a limitation on damages. *Id.* at *19–20. Because the experts were qualified and because the insured is entitled to prove the amount of their loss to carry its burden, the experts' testimony on the cost of repairs and amount of damages was proper. *Id.* at *21.

### C. Irmiter and Hinojosa are qualified experts whose opinions are reliable and will assist the jury in evaluating causation and damages in this case.

Arch does not attack the qualifications of either Irmiter or Hinojosa. (*See* Dkt. 18.) Rather, it argues that their opinions are "*ipse dixit*" and "devoid of the required analytical link connecting each step between the facts, application of methodology and experience, and the opinion proffered." (Dkt. 18 at 3.) This argument fails on its face. The record demonstrates that both Irmiter and Hinojosa are qualified experts whose opinions are based on facts fully developed before this Court as applied to applicable industry standards.

### 1. Irmiter's and Hinojosa's methodologies used in this case were comprehensive, and consistent with industry standards.

For this case, Plaintiffs retained Irmiter's company Forensic Building Science ("FBS") and Hinojosa's company RJH, Inc. ("RJH") to conduct an in-depth and comprehensive inspection at the Plaintiff's Property, and designated both Irmiter and Hinojosa to serve as testifying experts.

(Ex. 2, Irmiter Declaration ("Irmiter Decl." ¶ 8; Ex. 3, Hinojosa Declaration ("Hinojosa Decl.") ¶ 7.) Both Irmiter and Hinojosa are impeccably credentialed experts in their respective fields with significant expert experience outside of the litigation context. (*See* Ex. 2-A, Irmiter CV; Ex. 3-A, Hinojosa CV). FBS and RJH employ a collaborative process, whereby FBS investigates pertinent background information regarding the building performance over time, facts of the loss, and post-loss condition, and whereby RJH provides analysis based on applicable engineering standards and methodologies. (*See* Hinojosa Decl. ¶ 8.)

Consistent with industry methodology, FBS and RJH conducted a three-part inspection. (Irmiter Decl. ¶ 8; Hinojosa Decl. ¶ 7.) The first part is a visual inspection at the site, observing the conditions on the site at the time primarily focused on the facades that includes the four sides of the building. (*Id.*) The goal of the visual inspection is to look for anything indicative of this building changing from its original construction. (*Id.*) The second part of the inspection is the document review and review of damage chronology, building blueprints and service history of the building, and to interview tenants, building owners, and others who may have been there when the water discharge occurred. (Irmiter Decl. ¶ 9.) The third and final step of the inspection is to conduct invasive inspections of the building, the roof, and the interior. (*Id.* ¶ 10.) After conducting this three-step process in this case, FBS and RJH summarized their findings and completed a 361-page Storm Damage Report. (*See* Ex. 2-B, Storm Damage Report.)

**2. Irmiter's and Hinojosa's methodologies support the bases for their opinions.**

From its motion, it is clear that Arch either did not read the entire Storm Damage Report, or chooses to disregard important information in it. More than the mere "*ipse dixit*," the Report reflects exhaustive observational and analytical work that will allow Irmiter and Hinojosa to assist the jury.

Page **8** of **14**

First, Irmiter and Hinojosa's storm damage report carefully examined wind strength very close to the Property. (Ex. 2-B at 36-37.) Their research, using "NEXRAD" data from the National Weather Service, showed nine different mesocyclone events spotted within one half mile of the Property, and that a tornado also impacted this neighborhood. (Irmiter Decl. ¶ 13; Hinojosa Decl. ¶ 8; Ex. 2-B at 36-37 MEM INN). Critically, this information is wholly consistent with the findings of Arch's own adjuster, who inspected the Property on September 7, 2017 (less than two weeks after Hurricane Harvey), and found windows that were "blown out by wind" and that there was plywood "blown loose" on the roof:

> **Cause of Damage**
>
> Our inspection revealed that a small portion of damages to the loss location were a result of wind. We observed windows that were blown out by wind in approximately 20 units. The primary cause of damage was wind driven rain or rain entering through small unsealed openings in the elevations and roof.
>
> ...inspected the roofs of the loss location. We did not observe any created openings from a covered cause of loss on any part of the roof surface. It appeared that water entered around flashings, roof appurtenances, and HVAC equipment. We did observe approximately 12 pieces of plywood that was blown loose on the perimeter vertical facade of the front lobby portion of the roof. However, this area is approximately 2% of the roof surface and is not attributable to the leaks in most of the units. We have

(Dkt. 19-6, report of J. Phillip Dempsey, at ARCH-1109.)

The weather data researched and relied upon by Irmiter and Hinojosa directly contradicts the findings of Arch's own consultant, Envista Forensics, which concluded there was "no wind or wind-borne damage to the building envelope or roof system caused by the effects of Hurricane Harvey." (Dkt. 19-11 at ARCH-032.) Despite the significant wind damage found by Dempsey on September 7, not only did Arch did not even bother investigating wind speeds at or around the Property, it did not even examine wind speeds *specific to the City of Houston or Harris County*. The "Weather Data" incorporated within the Envista report consists of four pages of CompuWeather mapping of the Southeast Texas area affected by Hurricane Harvey. (*Id.* at

ARCH—79-82). The four separate maps purport to show peak sustained wind speed, peak wind gusts, total rainfall, and estimated maximum storm tide. (*Id.*) Critically, however, the Weather Data

- "does not account for tornadoes" (*id.* at ARCH—0079-80);
- has "a margin of error of plus or minus 20 percent" (*id.*); and
- does not specifically map, cite, or otherwise refer to the Property (or any nearby Properties), but simply uses a regional map of Southeast Texas (*see id.* at ARCH—0079-82).

In short, Irmiter and Hinojosa's testimony actually **confirms** Arch's own adjuster's original conclusions about the cause of the damage – wind – to both the windows and the roof at the Property. And unlike Arch's expert, Irmiter and Hinojosa actually obtained the best available wind and weather data closest to the Property, as opposed to a generalized, regional map.

With this critical and credible information in tow, Irmiter and Hinojosa were able to formulate their opinions on the cause of the losses at the Property. The Storm Damage Report contains hundreds of photos of the Property, many of which have notations and descriptions next to many of the photos. *See* Ex. 2-B at, *e.g.,* 0042 MEM INN ("gaps identified around window frames were new in appearance and were consistent with wind damage"); 00198 MEM INN (finding cap on roof displaced by wind). Furthermore, both Irmiter and Hinojosa will testify that they considered the other potential causes raised by Arch's consultants – specifically, wear and tear, maintenance, deterioration to the property, and surface water – and have ruled them out. (Irmiter Decl. ¶ 19; Hinojosa Decl. ¶ 10.). FBS even recently did a follow-up inspection and produced a supplemental report. (Irmiter Decl. ¶ 15-16; Ex. 2-C, Supplemental Report.) In that report, FBS specifically accounted for damage to coatings to concrete masonry units, known as "Lamina," which Irmiter

opines was damaged in part by flood waters. (Irmiter Decl. ¶ 16.) Irmiter specifically excluded that damaged portion of the Property from his repair damage calculation. (*Id.* ¶¶ 17-18.) That is, Irmiter recognized portions of the Property that were damaged by flood – and not wind – and carved that out of his damages calculation (*See id.*) This lends further credibility to his testimony.

Arch will have the opportunity to conduct "vigorous cross-examination" permitted by *Daubert,* beginning with the depositions of Irmiter and Hinojosa. *See Vargas*, 317 F.3d at 500, citing *Daubert*, 509 U.S. at 593–94. Arch has failed to show that exclusion of Irmiter and Hinojosa is an appropriate remedy here.

> **3. The Storm Damage Report complies with Rule 26(a), but in any event, Arch still has the opportunity to depose both experts so it cannot show prejudice.**

Arch argues that the Storm Damage Report fails to comply with Rule 26(a) because it "fails to disclose their methodology." (Dkt. 18 at 10.) This is simply not true. The Storm Damage Report describes in painstaking detail the background information and methods that both Irmiter and Hinojosa employed in their analysis, including consideration of applicable weather data, any previous damage at the Property, previous repairs made, and reference materials relied upon. (Ex. 2-B at 033-041, MEM INN). This does not even mention the hundreds of photos they took, in formulating their ultimate conclusion on causation. (*Id.* at § 4.0, 055 MEM INN).

In any case, even if there were some technical violation of Rule 26(a), Arch cannot show such violation was not "substantially justified or harmless" because Arch still has the opportunity to depose both experts, an opportunity granted them after the expiration of the discovery period.

> **D.  Irmiter and Hinojosa can testify on RCV damages because this is Plaintiffs' burden, but in any event, the Storm Damage Report contains an ACV estimate.**

Lastly, Arch's argument that Irmiter and Hinojosa should not be permitted to testify as to the

RCV loss is unfounded. Plaintiffs extensively brief in their response to Arch's motion for summary judgment why the RCV measure of damages, not ACV, is appropriate. The ACV measure should not come into play at all. As noted in the response, the ACV provision is a limitation of the Policy, which Arch has the burden of proving, but did not plead as an affirmative defense. *See Standard Waste Sys. v. Mid-Continent Cas. Co.*, 612 F.3d 394, 398 (5th Cir. 2010); TEX. INS. CODE § 554.002. Failure to raise an affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure in generally results in a waiver. *See, e.g., Giles v. GE*, 245 F.3d 474, 491 (5th Cir. 2001). Arch has waived this argument.

Nonetheless, Plaintiffs bear the burden to show the value of their loss. *Ayoub,* 641 F. App'x at 307. The Storm Damage Report and FBS's Supplemental Report are evidence in support of the value of the loss. But even if, for some reason, the ACV measure were applied, the Supplemental Report furnishes such a measure. (*See* Ex. 2-C at 996 MEM INN).

### III. CONCLUSION & PRAYER

Disagreement over expert conclusions is not a proper basis for striking a party's properly-designated qualified expert. Irmiter and Hinojosa are qualified experts who will provide important testimony establishing and quantifying Plaintiffs' damages. There is no doubt that their testimony will assist the factfinder in understanding the evidence in this case. Furthermore, the testimony is a necessary component in proving up Plaintiffs' damages and carrying their burden under Texas law. In accordance with *Daubert,* Arch will have full opportunity to challenge Irmiter and Hinojosa's opinions in the traditional manner by deposing them, and then presenting contrary evidence and cross-examining them at trial. *See Daubert*, 509 U.S. at 596. The Court should deny Arch's motion.

Respectfully submitted,

**RAIZNER SLANIA LLP**

*/s/Jeffrey L. Raizner*
Jeffrey L. Raizner
Texas Bar No. 00784806
Federal ID No. 15277
jraizner@raiznerlaw.com
RAIZNER SLANIA LLP
2402 Dunlavy Street
Houston, Texas 77006
Telephone: (713) 554-9099
Facsimile: (713) 554-9098

Of Counsel:

Andrew P. Slania
Texas Bar No. 24056338
Federal ID No. 1057153
aslania@raiznerlaw.com
Amy B. Hargis
Texas Bar No. 24078630
Federal ID No. 1671572
ahargis@raiznerlaw.com
Ben Wickert
Texas Bar No. 24066290
Federal ID No. 973044
bwickert@raiznerlaw.com
RAIZNER SLANIA LLP
2402 Dunlavy Street
Houston, Texas 77006
Telephone: (713) 554-9099
Facsimile: (713) 554-9098

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

This is to certify that on the 18th day of February, 2019, a true and correct copy of the foregoing document was delivered to all counsel of record, via the Court's electronic notice system, in accordance with the Federal Rules of Civil Procedure:

Christopher M. Raney (Attorney-In-Charge)
**Gordon Rees Scully Mansukhani LLP**
State Bar No. 24051228
Federal Bar No. 609101
craney@grsm.com
1900 West Loop South, Suite 1000
Houston, TX 77027
(713) 961-3366 (Telephone)
(713) 961-3938 (Facsimile)

**ATTORNEYS FOR DEFENDANT**
**ARCH SPECIALTY INSURANCE**
**COMPANY**