IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TASLID INTERESTS, INC. and KATY MOTELS, INC. dba MEMORIAL INN & SUITES | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 4:18-cv-1692 |
| ARCH SPECIALTY INSURANCE COMPANY | § § § § | |
| Defendant. | § § | |

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO EXCLUDE EXPERT TESTIMONY OF THOMAS J. IRMITER AND ROBERT HINOJOSA AS TO CAUSATION OF ROOF DAMAGE AND REPLACEMENT COST VALUE DAMAGES**

Defendant Arch Specialty Insurance Company ("Arch") files its Reply to Plaintiffs' Response to the Motion to Exclude Expert Testimony of Thomas J. Irmiter and Robert Hinojosa as to Causation of Roof Damage and Replacement Cost Value Damages [Doc. 24], and show:

**I.   Basis of Reply**

1.   The threshold issue is whether wind during Hurricane Harvey first created an opening in the roof or building envelope of Plaintiffs' motel through which water entered, or whether, after 30" of rain fell on Plaintiffs' flat, deteriorated roof, water seeped and leaked through pre-existing deficiencies. Despite attempts to expound upon and supplement their opinions, Plaintiffs' experts Thomas Irmiter and Robert Hinojosa continue to fail to explain how they reached their joint conclusion that wind caused the reported water damage. As such, the opinions are not reliable, and are not helpful to the jury. Further, it was Plaintiffs' duty to timely disclose their experts' opinions and methodology, which was not done.

1

## II. There is Still No Connection Between the Data and Conclusions or a Reliable Explanation of How Water Intrusion Occurred as a Result of a Storm-Created Opening

2. Plaintiffs' Response does little to address the central issue of Defendant's challenge to their experts' opinions: the lack of an explanation of where an opening was created or how the extensive water intrusion occurred because of such opening. The Response refers to the 361-page Storm Damage Report (the "Report") and its recitation of: (1) weather data close to the property, (2) the experts' three-part inspection; and (3) hundreds of photos of the property.[1] Despite its length, the Report contains virtually no analysis or explanation of where or how water penetrated the building. There is no method or analysis in the experts' actual opinions.

3. As a preliminary matter, weather data reflecting tornadic activity in the vicinity of the property is not evidence that a tornado actually hit the property or that severe winds otherwise created an opening in the roof or building envelope. With respect to any direct evidence of wind damage to the building, Plaintiffs refer only to portions of the Report citing (1) damage to windows of 20 units, (2) that 12 pieces of plywood were blown loose from a small portion of a decorative parapet, and (3) a slanted cap of a single roof vent (one of many vents on the roof) allegedly "displaced" by wind.

4. As to the broken windows, Arch did not deny coverage for that damage.[2] Further, any window-related damage or "opening" could not have caused water penetration of the roofing system or the other 30 units, and Plaintiffs experts do not opine that occurred.

5. With respect to the "blown out" plywood, the Response refers to a report by one of Arch's experts noting an observation that approximately 12 pieces of plywood were blown loose from the perimeter vertical façade of the front lobby portion of the roof. That sentence is

---

[1] Plaintiff's Response [Doc. 24] at pp. 8-10.
[2] No payment was made because the estimate to repair the damage did not exceed the deductible.

immediately followed by the statement that, "However, this area is approximately 2% of the roof surface and is not attributable to the leaks in most of the units."[3] Nonetheless, Plaintiffs' experts do not specifically identify a storm-created opening related to the missing plywood as the cause of the water intrusion resulting in the water damage claimed. Further, the Response points to one photograph, out of hundreds, taken five months after the storm and after some temporary repairs were made, of a single cap of a roof vent allegedly "displaced by wind":



Figure 259.    Cap displaced by wind (KJS)

[4] But, the experts' opinions do not conclude that water entered through this vent, or any other wind-damaged roof vent, nor do the experts connect this vent to the entirety of the reported damage.

6. The experts merely point to isolated evidence of alleged "wind damage" at the property and their general inspection and observations, and then leap to the conclusion that the wind damage caused the water intrusion and resulting water damage to the entire roof and interior units. The experts have not provided a reliable explanation of where a storm-created opening was located, other a broken window, to which the widespread water intrusion can be attributed. There is no analysis of any specific roof damage to explain the experts' conclusions as to causation.

---

[3] Plaintiff's Response [Doc. 24] at p.9 (citing Doc. 19-6, Dempsey Report, ARCH 1109).
[4] Plaintiff's Response [Doc. 24-4], at 000198, MEM INN.

### III.     The Experts' Untimely Submitted Declarations Do Not Fill the Gap

7.      Plaintiffs' experts originally opined that the property was "damaged by the tornadic winds which occurred during the storm event" and that ". . . it is more likely than not that the observed damage to the roofing system . . . [and] the interior water damage . . . is a result of Tropical Storm Harvey."[5] Defendant challenged these conclusions as unreliable and irrelevant because they failed to address the ultimate issue of whether policy exclusions and limitations carving out interior water damage or other noncovered causes are applicable. Plaintiffs' experts' declarations submitted with the Response, which are untimely, attempt to fix this blatant gap, but do not. The declarations now state, "it is more likely than not, that the interior water damage we observed was a result of rainwater that entered after the winds created an opening to the building envelope…"[6] Yet again, the experts do not identify an opening which could have been a source of all of the interior water damage and water damage to the roof layers, or how the evidence led them to that conclusion.

8.      The declarations state that, based on their weather research and inspection, that "the roof system, windows, some PTAC units, parapet walls, and some roof vents were damaged by tornadic winds..."[7] As discussed, water damage related to openings created by broken windows was covered. The only other structural damage noted, other than window-related damage, is to the parapet walls and "some" roof vents. The parapet is the extended "wall" along the edge of the motels' flat roof. Neither in the declarations nor in the Report do the experts identify an opening created in the parapet walls through which water entered. For example, one notation to a photograph in the Report merely notes "parapet tipped in after event" (0000199 MEM INN).

---

[5] Defendant's Motion to Exclude Expert Testimony of Thomas J. Irmiter and Robert Hinojosa as to Causation of Roof Damage and Replacement Cost Value Damages [Doc. 18-2] at p. 000056, MEM INN.
[6] Page 3 of Irmiter Declaration, Exhibit 4 to Response, Doc. 24.
[7] *Id.*

4



Figure 262.    Parapet tipped in after event (KJS)

But, assuming *arguendo* the parapet was tipped in because of wind, evidence of wind damage is not evidence of a storm-created opening, nor have the experts identified an opening in the parapet. As to the missing plywood from the nonfunctional portion of the parapet wall extension, the experts do not state that the dislodged plywood created an opening through which water entered. Similarly, the experts do not state that water entering through any damaged roof vent caused the interior water damage.[8] Although the experts generally refer to damage to the "roof system" or an opening the "roof assembly," there is no evidence of such an opening and the experts do not explain the source(s) of the interior water damage.

### IV. Conclusion

9.    Although Irmiter and Hinojosa's late declarations generally assert that water entered through a storm-created opening, this pre-ordained conclusion is devoid of a methodology that can be followed to connect the evidence of alleged wind damage to a storm-created opining to the interior water damage caused by water intrusion, is not reliable, and will not be useful to the jury.  As a result, Defendant prays that its Motion to Exclude Expert Testimony of Thomas J. Irmiter and Robert Hinojosa as to Causation of Roof Damage and Replacement Cost Value Damages be granted, that the experts' opinions as to same be excluded from trial, and for such other and further relied to which it may be entitled.

---

[8] Defendant's Motion to Exclude Expert Testimony of Thomas J. Irmiter and Robert Hinojosa as to Causation of Roof Damage and Replacement Cost Value Damages [Doc. 18-2] at p. 000044, MEM INN.

Respectfully submitted,

**Gordon Rees Scully Mansukhani LLP**

By: */s/ Christopher M. Raney*
Christopher M. Raney (Attorney-In-Charge)
State Bar No. 24051228
Federal Bar No. 609101
craney@grsm.com
1900 West Loop South, Suite 1000
Houston, TX 77027
(713) 961-3366 (Telephone)
(713) 961-3938 (Facsimile)

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing document was served upon all counsel via electronic filing and email, on this the 22nd day of February, 2019.

*/s/ Christopher M. Raney*
CHRISTOPHER M. RANEY